386 P.2d 252

**STATE of New Mexico ex rel. STATE BOARD OF EDUCATION of the State of New Mexico, Petitioner,**

v.

**The Honorable Samuel Z. MONTOYA, District Judge of the First Judicial District, State of New Mexico, Respondent.**

No. 7448.

Supreme Court of New Mexico.

Sept. 16, 1963.

Rehearing Denied Nov. 14, 1963.

E. P. Ripley, Santa Fe, for petitioner.

Standley, Kegel & Campos, Santa Fe, for respondent.

MOISE, Justice.

In the present case we must determine if the district court of Santa Fe County should be prohibited from proceeding, either by way of mandamus or injunction, to consider the right of the State Board of Education to hear appeals of seven teachers in the Rio Arriba County school system. Involved is the question of whether or not the State Board of Education has jurisdiction to hear appeals of school teachers enjoying tenure status when such teachers are being transferred by the employing board of education, and it is alleged that the transfer is, in effect, a dismissal because of undue hardship and was unreasonable, arbitrary and capricious.

The facts giving rise to this proceeding are fairly simple. At a meeting of the Rio Arriba County Board of Education held on April 25, 1963, the seven teachers involved, having taught in a particular school of the county for varying periods of from 5 to 16 years, were re-elected but assigned to different schools in Rio Arriba County. Notice to this effect was given prior to the closing day of the 1962–1963 school year. The teachers protested the transfers and were given hearings. However, the board stated the hearings were not pursuant to § 73–12–13, N.M.S.A.1953. After the hearings, the board reaffirmed its decisions with reference to the transfers. Thereupon, the seven teachers undertook to appeal the decision to the State Board of Education as provided in § 73–12–13, N.M.S.A.1953, and the state board, acting through a subcommittee, determined that sufficient cause existed for allowance of the appeals. Thereupon, the County Board of Education sought relief in the district court of Santa Fe County in two actions—one seeking mandamus, and the other injunction—the purpose being to prevent the State Board of Education from considering the appeals, it being alleged in each of the proceedings that under § 73–12–13, N.M.S.A.1953, the state board was without jurisdiction, power or authority to hear appeals involving transfers of teachers. In turn, the state board, as relator here, seeks to prohibit the respondent from interfering with its proceeding to hear the appeals. We issued our alternative writ, and now consider the merits of the controversy.

It is clear that the mandamus and injunction proceedings are within the

jurisdiction of the respondent under the provisions of Art. VI, § 13, N.M.Const. It is equally clear that we will not prohibit the court from proceeding unless the petition presents a case where jurisdiction is being exceeded or, in the exercise of our superintending control, we are moved to do so to prevent irreparable mischief, exceptional hardship, costly delay and undue burdens of expense, or where the remedy by appeal is grossly inadequate. State ex rel. Kermac Nuclear Fuels Corporation v. Larrazolo, 70 N.M. 475, 375 P.2d 118.

It is asserted by relator that the case comes squarely within the doctrine of State ex rel. State Corporation Commission v. Zinn, 72 N.M. 29, 380 P.2d 182, and that under the doctrine of exhaustion of remedies it should have the first opportunity to determine its own jurisdiction. However, we perceive a significant and decisive distinction. Any right which relator may have to consider the appeals must be based upon Art. XII, § 6, subd. A, N.M.Const., effective January 1, 1959, which reads:

"Sec. 6. A. There is hereby created a 'state department of public education' and a 'state board of education.' The state board of education shall determine public school policy and vocational educational policy and shall have control, management and direction of all public schools, pursuant to authority and powers provided by law. The board shall appoint a qualified, experienced educational administrator to be known as the superintendent of public instruction, who shall, subject to the policies established by the board, direct the operation of the state department of public education."

and upon § 73-12-13, N.M.S.A.1953, the pertinent parts of which read, as follows:

"A. On or before the closing day of each school year the governing board of education, hereinafter referred to as the governing board, of each school district in the state, whether rural, municipal or otherwise, shall serve written notice of reemployment of or dismissal upon all personnel by it then employed certified as qualified school personnel by the state board of education hereinafter referred to as the state board. *Written notice of placement shall also be given to such qualified school personnel employed by county boards of education on or before the closing day of school of each year.* Failure of the governing board to serve written notice shall be construed the same as if such qualified person had been reemployed for the ensuing school year. (Emphasis added)

"B. The notice of dismissal required under subsection A of this section to any certified employee who has been employed in a particular county or other particular administrative school unit for three (3) consecutive years

and holds a contract for the completion of a fourth consecutive year in a particular school district shall specify a place and date for a hearing not less than five (5) days nor more than ten (10) days from the date of service of such notice at which time the certified employee may appear. Notice of dismissal shall contain a statement of the cause or causes for dismissal upon which the governing board bases its decision to terminate the service of any certified employee. Causes of dismissal shall be any such causes specified in the uniform contract approved by the state board for certified public school personnel or any other good and just cause. Personal service of such notice shall be made as provided by law for civil service of process and proof thereof shall be made by the affidavit of the person making such service. Any certified employee aggrieved by the decision rendered after such hearing by the governing board may within ten (10) days from the date of receipt thereof appeal to the state board.

"C. Upon the filing of an appeal under subsection B of this section the state board shall within thirty [30] days require the governing board to file with it a transcript of the record and upon receipt of such transcript shall review the case and determine whether or not the appeal be allowed or denied. The finding of the state board in granting or denying the appeal shall be made known to the aggrieved certified employee within ten [10] days following the state board's determination. If the appeal is allowed the state board shall review the procedures followed by the governing board from the inception of the cause or causes upon which original decision of the governing board to terminate the service of the certified employee were based. If the state board finds in writing that there exists a substantial departure prejudicial to the appellant-certified employee from the procedures prescribed by the state board under subsection D of this section for governing boards in the dismissal of certified employees, such certified employee shall be considered employed for the following year under the terms of his existing contract and shall be entitled to any additional compensation allowed other certified employees of like qualifications and experience employed in the same school system or administrative school unit. Any certified employee or governing board aggrieved by decision of the state board may appeal to the district court, at which time a trial de novo of all matters of law and fact shall be had.

"D. The state board shall prescribe procedures for governing boards to be followed in the dismissal of certified school personnel. These shall include:

"(1) Operational and personnel management standards relating to supervision and correction of certified personnel whose work performance is unsatisfactory before resort to dismissal should be had.

"(2) Standards for the conduct of hearings on dismissal proceedings to include requirement that all testimony given thereat shall be under oath, that parties be represented by counsel if desired and allowed to cross-examine witnesses, and that proceedings be recorded in writing.

"(3) Decision of the governing board to be based on the evidence in the record.

"(4) Written records made at or reasonably near the time that supervisory and counseling recommendations are made to a certified employee as to improvement of his work performance or on other matters and the certified employee's written response thereto shall be used in evidence in dismissal proceedings."

An argument is made by relator that it has jurisdiction under the general powers granted it in § 73-1-1, N.M.S.A.1953, as amended by Chap. 335, § 1, N.M.S.L.1959, reading as follows:

"The state board of education, pursuant to section 6, Article XII, of the state Constitution, shall be the governing authority of all public elementary and high schools of the state and shall cause the provisions of this chapter to be carried into effect to the end that the school laws of the state shall be properly and uniformly enforced. Said board shall determine public school policies, vocational educational policies, adopt text books, be authorized to accept federal aid to education and shall have control, management and direction of all public schools. Said board shall determine educational policies of the state, and shall enact and publish by-laws for the administration of the public school system. For the purpose of enforcing the provisions of this act the state board of education shall, if necessary, institute legal proceedings. The secretary of the state board of education shall have authority to administer oaths in any part of the state, to witnesses in any matter pending before said board.

"Said board is authorized to delegate such administrative and executive functions to the superintendent of public instruction as it may see fit, and the state superintendent of public instruction shall direct the operation of the state department of public education

subject to the policies established by the board."

when read together with § 73–1–7(J) and (N), N.M.S.A.1953, as follows:

"73–1–7.—The state board of education shall have the following powers:

  *   *   *   *   *   *

"J. To make and require the performance of all needful rules and regulations respecting the general powers of supervision of schools by the board.

  *   *   *   *   *   *

"N. To adopt rules and regulations not inconsistent with law, for its own government and for the government of the public elementary and high schools of the state. * * *"

We find it unnecessary to determine this issue. Although it may be conceded that the grant of powers in the sections cited is exceedingly broad, it is clear that in the absence of promulgation and adoption of rules and regulations as authorized by § 73–1–7(J) and (N), N.M.S.A.1953, the exercise of such powers is necessarily limited. We might add in passing that in the light of the reference in § 73–12–13, N.M.S.A.1953, to the giving of written notice of placement, a serious question would be present concerning the presence of power to deal therewith beyond what is there provided. However, we do not consider the question.

If relator has the power to hear the appeals in the instant case, it must arise under § 73–12–13, N.M.S.A.1953. We do not see in our tenure statute any guaranty that a teacher must be retained in any particular school or given any particular assignment. Nothing can be found in the statute giving a teacher a vested right to teach at any one school or any one class. Our tenure law, as is true of most tenure laws, does not purport to limit the right or power of the governing school authorities to exercise their discretion in making assignments of tenure teachers. See annotation, 103 A.L.R. 1382.

We think that the situation under our tenure statute is much like that passed upon in Mitchell v. Board of Trustees of Visalia Union High School Dist., 5 Cal.App.2d 64, 42 P.2d 397, from which we quote the following pertinent language:

"There is nothing in the tenure law which interferes with the general power and right of a board of education to assign teachers to particular classes and to particular schools in accordance with its judgment and desire reasonably exercised. A teacher, in acquiring a permanent status, does not thereby acquire a vested right to teach any certain class or in any certain school. While a board would have no right to evade the plain meaning of the tenure act by assigning a teacher to a class of work for which he was not qualified, for the purpose of compelling his resignation, it has the power to reasonably

change assignments with respect to a permanent teacher so long as the work assigned is of a rank and grade equivalent to that by which the permanent status was acquired and so long as the assignment is one for which the teacher in question is qualified. * * *"

The following from State ex rel. Ging v. Board of Education of City of Duluth, 213 Minn. 550, 7 N.W.2d 544, at 561, is also pertinent:

"* * * Notwithstanding a teacher has acquired tenure status, he may be so transferred from class to class, or building to building, or division to division without a resulting 'discontinuance of position,' and without seeming loss of caste, provided he is not thereby demoted. But though the power so to transfer teachers unquestionably exists, it must be exercised in good faith and for the best interest of the school district and must be based upon actually existing school conditions (Neal v. Board of Education [of Putnam County] 116 W.Va. 435, 181 S.E. 541; White v. Board of Education [of Lincoln County] 117 W.Va. 114, 184 S.E. 264, 103 A.L.R. 1376), and not for the purpose of compelling a teacher's resignation. Mitchell v. Board of Trustees, 5 Cal.App.2d 64, 42 P.2d 397."

■ It follows from the foregoing that although the relator had no power to hear appeals in cases involving assignment of tenure teachers and their transfers between schools, an exception exists where the transfer is made so as to force a resignation or, in other words, where the transfer was designed as an indirect method of accomplishing a termination of services. We do not find any allegations which suggest that the transfers were made for this purpose. True, it is alleged that the transfers were "tantamount to, and in effect a dismissal" because they constituted "an undue hardship" upon the teacher and were "unreasonable, arbitrary and capricious act[s]," and it is prayed that the relator on appeal determine that the transfers resulted in "a hardship tantamount to a dismissal and the action of the County Board of Education, in so dismissing the Applicant[s], was unreasonable, arbitrary and capricious."

■ We do not see in the quoted language any suggestion that the county board had determined upon the transfers as a subterfuge or for the purpose of forcing the teachers out of the school system in violation of their tenure rights. Conceding that for reasons of which we are not aware, a hardship may be visited upon a teacher, still we see nothing in § 73–12–13, N.M.S.A. 1953, giving the right to relator to review such action on appeal. Under the facts of this case and the statute, relator is not invested with power to consider alleged arbitrary, unreasonable and capricious acts of a governing board, not taken in con-

nection with discontinuance of a teacher's services. Whether or not such action may be reviewed in court we need not consider. Indeed, it appears that the teachers, in addition to filing their appeals, also brought suits in the district court of Rio Arriba County, seeking to nullify the action taken by the county board because of its alleged arbitrary and capricious nature. These cases are still pending and their merits will be decided in due time.

The difference between the instant case and State ex rel. State Corporation Commission v. Zinn, supra, is thus apparent. There, a question of jurisdiction in the State Corporation Commission under the pertinent constitutional and statutory provision was present, as appeared from the pleadings. Here, absent allegations that the county board had acted as it did in order to accomplish dismissals, no basis in law is present for relator to hear the appeals. Accordingly, it is clear that it was not "proceeding under its statutory authority," which is stated in Zinn, supra, as the controlling factor, in determining right in the board to pass upon its jurisdiction in the first instance. It follows that we should not interfere with the district court in the exercise of its constitutional power to consider the issues presented in the mandamus and injunction proceedings, either under a theory of lack of jurisdiction or in the exercise of our powers of superintending control.

Relator alleges that failure to prohibit "will result in immediate and irreparable damage to the Rio Arriba County schools and the children thereof, and will cause irreparable damage, exceptional hardship, costly delays, and undue burdens to the petitioners (relators) and to the certified personnel involved," and, further, that there is an absence of a plain, speedy and adequate remedy at law.

In turn, relator argues that if in every case where an appeal is sought, there may be interference by a court, the smooth and efficient operations of the board will be successfully prevented. Further, that the hearing on the appeals had been set for a date prior to commencement of the fall term of school; that the orders to show cause issued by respondent prevented the holding of the hearing of the appeals as scheduled, and that unless the alternative writ issued by us is made absolute the matters cannot be settled prior to the opening of school in September.

We are not impressed that refusal to make our writ absolute will open the door to unrestricted interference by the courts with the smooth and efficient performance of relator's constitutional and statutory duties. We have not been cited to any such inroads in the past, nor do we see it in the instant case. Neither are we convinced that the settlement of the problem presented will be more speedily accomplished by vacating the writ issued by us and permit-

ting the trial court to consider the question of the relator's jurisdiction. Compare, Mora County Board of Education v. Valdez, 61 N.M. 361, 300 P.2d 943.

Relator argues in its brief that mandamus was not the proper remedy to accomplish the ends sought by the county board, viz., a preventive order rather than a coercive one. However, the county board proceeded both by mandamus and by injunction and we do not find it necessary to consider which was technically correct. The relief sought was available under one or the other. We would call attention to the following cases in this jurisdiction where the accomplishing of restraints or the enjoining of actions through mandamus proceedings are recognized. State ex rel. Roberson v. Board of Education of City of Santa Fe, 70 N.M. 261, 372 P.2d 832; Kiddy v. Board of County Commissioners of Eddy County, 57 N.M. 145, 255 P.2d 678; State ex rel. Shepard v. Mechem, 56 N.M. 762, 250 P.2d 897.

It follows from what has been said that the writ herein was improvidently issued, and should be vacated and set aside.

It is so ordered.

COMPTON, C. J., and CARMODY and NOBLE, JJ., concur.

CHAVEZ, J., not participating.