Anna Mae COLLINS, Respondent,

v.

WAKONDA INDEPENDENT SCHOOL DISTRICT # 1 and the Board of Education of Wakonda Independent School District # 1, Appellants.

No. 11785.

Supreme Court of South Dakota.

Argued Jan. 14, 1977.

Decided April 15, 1977.

William J. Klimisch of Goetz, Hirsch, Haar & Blackburn, Yankton, for appellants.

Richard D. Hagerty, Yankton, for respondent.

PORTER, Justice.

The South Dakota Continuing Contract Law required appellant (school board) to offer respondent (teacher) a contract for the 1975–1976 school year " * * * under the same terms and conditions as the [teacher's] contract for the then current year." [1] If the school board did so, and the teacher refused the contract, she has no statutory right to continued employment in the school district. For the reasons given, *infra,* this case must be remanded so that judgment may be entered for appellants, the school board and school district.

Respondent teacher taught fourth grade within the school district continuously for eighteen years, including the 1974–75 school year. She refused the new contract for 1975–76 which offered her employment as a teacher in the seventh and eighth grades. The contract was otherwise identical to her 1974–75 contract.

The purposes of the Continuing Contract Law are to provide teachers security in employment and to prevent dismissal of a teacher without cause.[2] The employment protected is the right to continued employment within the school district in a

---

1. Statutory citations in this opinion refer to statutes in effect as of May, 1975 when this controversy arose. They do not reflect changes pursuant to S.L.1975, chs. 128, 139. SDCL 13–43–10 provided:

   "Any teacher who has been employed by any board of education of any school district in this state for at least two successive years shall be notified in writing by the board of education on or before the first day of April of the current year of the board's determination not to renew the teacher's contract for the ensuing school year, and failure to give such written notice on or before said date shall constitute an offer on the part of the board to renew the contract for the ensuing school year under the same terms and conditions as the contract for the then current year. Different terms and conditions may be mutually agreed upon by the board and teacher at any later time."

2. SDCL 13–43–10; but see SDCL 13–43–13 which provides:

   "Nothing in §§ 13–43–9 to 13–43–12, inclusive, shall be construed as in any manner repealing or limiting the operation of any existing law with reference to the dismissal of teachers for cause."

teaching position for which the teacher is qualified.[3] Moreover, the position offered in the new contract must not be a demotion, as compared to the teaching position held under the existing contract. *Goodwin v. Bennett County High School Independent School District,* S.D., 226 N.W.2d 166 (1975).

■ By the Continuing Contract Law the legislature did not, however, intend to grant the teacher a vested right to a specific school or to a specific class level of students within any school, in the district.[4] The school board must be able to adapt to changes in enrollment, curriculum, available money, and other circumstances in determining the re-employment contract which is to be offered. The board is given such administrative authority by SDCL 13–8–1, 13–8–39, and 13–10–2.[5]

Respondent teacher contends the board offered her a teaching position for which she was not qualified and thus did not comply with the Continuing Contract Law. The teacher here was born in 1919, is married, and received a bachelor of science degree in education from the University of South Dakota in 1966. She has eighteen credit hours of college work earned after 1966. At the time in question, May, 1975, she held a "Teacher Certificate" issued March 12, 1971 by the Department of Public Instruction of the state, with an expiration date of July 1, 1976. The certificate was valid for grades K–8 in an elementary school, grades 7–9 in a formally organized junior high school, and grades 5–8 in an approved middle school.

The superintendent of schools for the district testified that the teacher's transcript of credits from the University of South Dakota indicated she has an academic background in all the subject areas normally taught in the seventh and eighth grades, and that she was, in his opinion, qualified to teach seventh or eighth grade in the district. The teacher's witness, holder of a doctorate in elementary education and in charge of placement and certification of elementary and secondary school teachers at the School of Education of the University of South Dakota, disagreed. He testified a teacher with her academic background was not qualified to teach beyond the sixth grade. Taking all seventh and eighth grade teachers in the state, it was his opinion a larger percentage would have secondary education backgrounds and the smaller percentage elementary education majors [as does respondent teacher]. He did admit that some of his elementary education majors were presently teaching in the seventh or eighth grade, although they did not secure those positions through his placement office.

■ The legislature has determined that teachers may not be employed to teach a grade level for which they are not certified, but may be employed to teach any class level within their certificate.[6] The legisla-

---

3. *Mitchell v. Board of Trustees,* 5 Cal.App.2d 64, 42 P.2d 397, 400 (1935).

4. *Goodwin v. Bennett County High School Independent School District,* S.D., 226 N.W.2d 166 (1975); *Netwig v. Huntington Beach Union High School District,* 52 Cal.App.3d 529, 125 Cal.Rptr. 170, 171 (1975); *State ex rel. State Board of Education v. Montoya,* 73 N.M. 162, 386 P.2d 252, 256 (1963); *Matthews v. Board of Education of City of San Diego,* 198 Cal.App.2d 748, 18 Cal.Rptr. 101, 105 (1962).

5. SDCL 13–8–1:
   "The school board is an elected body created according to the laws of the state to serve as the governing board of a school district for the purpose of organizing, maintaining, and locating schools and for providing educational opportunities and services for all citizens residing within the school district."

SDCL 13–8–39:
   "As provided and limited by law, the school board shall have general charge, direction, and management of the schools of the district * * *."
Prior to the 1975 amendment, S.L.1975, ch. 128, § 71, SDCL 13–10–2 provided:
   "Any school board shall have the power to employ * * * teachers, * * * and any other personnel deemed necessary by the board, and to define the duties and fix the compensation of each."

6. SDCL 13–42–1 provided:
   "No person shall be allowed to teach or administer in any of the public schools of this state nor draw wages as a public schoolteacher, principal, or superintendent who does not have a valid, unexpired certificate issued by the state superintendent of public instruction and authorizing said person to

tive purpose is to make uniform throughout the state the minimum academic background required for each level of teaching through grade twelve, and to delegate to an appropriate state agency the authority to implement the legislative will.[7] The legislature, we believe, intended that respondent teacher's certificate could be accepted by the board at face value, i. e., as proof that the teacher was not only "certificated" to

> teach or administer in the school or field for which he was employed or elected."

7. The following statutory citations are reflective of that legislative purpose.

SDCL 13–42–3 provided:
> "The state board of education shall have full authority to determine and prescribe standards and requirements for different types of certificates authorizing the holder thereof to teach or administer in certain specified schools or fields. The duration and the method of renewal or reinstatement of said certificates and other rules and regulations deemed necessary for the administration of teacher certification and not prescribed by law shall be determined by the state board of education."

SDCL 13–42–4 provided:
> "The authority to issue teachers' certificates is vested in the superintendent of public instruction, and such certificates shall be issued to such persons who have met the standards and requirements for said certificates as determined by the state board of education."

SDCL 13–43–5 provided:
> "A teacher shall be allowed to sign a contract only upon exhibition of a certificate valid to teach the subjects and grades in the school contemplated under the said contract. A certificate must be such as to qualify a school for accreditation in order for the certificate to be valid. Such certificate shall be registered in the office of the superintendent of schools having supervision over the school district or districts."

SDCL 13–43–6 provided:
> "The contract shall specify the date at or about which the school shall begin, the term of employment, the wages per month, and the time of payment thereof; such contract shall be signed in duplicate and one copy filed in the office of the clerk and the other retained by the teacher. Such contract may be issued covering any period of years over which a teacher holds a certificate which will remain valid without renewal."

SDCL 13–43–7 provided:
> "The following conditions shall be understood as forming a part of every contract whether specified therein or not:
> \* \* \* \* \* \*

teach seventh and eighth grade but was also academically "qualified" to do so.[8] The superintendent of schools agreed that respondent teacher was qualified. The teacher's expert witness did not single out respondent teacher as unqualified; rather the witness testified that *all* elementary education majors with a bachelor's degree were not academically qualified to teach beyond sixth grade, although an unstated number

> (5) Every teacher shall annually register her certificate with the county superintendent of schools;
> \* \* \* "

8. The state board of education is empowered to promulgate standards and requirements for certification. SDCL 13–42–3. Those requirements are found in the Administrative Rules for South Dakota (1974) [hereinafter ARSD].

ARSD 24:02:03:02:
> "Level of academic preparation. Teachers' certificates shall show the holder's academic training as follows:
> \* \* \* \* \* \*
> (4) 'Bachelor's degree,' the teacher holds a bachelor's degree from an accredited college or university, and has completed an approved program in elementary or secondary education from an accredited college or university;
> \* \* \* "

ARSD 24:02:03:25:
> "Level of teaching validity certificate endorsements. Teacher certificates will show in which of the following levels the holder may teach:
> \* \* \* \* \* \*
> (2) Elementary school with a program of kindergarten through grade eight operated within the limits of an incorporated town, or in grades seven through nine in a formally organized junior high school, or in grades five through eight in an approved middle school.
> \* \* \* "

ARSD 24:03:01:01:
> " \* \* \*
> (80) 'Teacher, qualified,' a teacher holding a valid South Dakota teacher certificate assigned to teach, supervise, or administer only the projects, grades, or school system authorized by such certificate in accordance with all the standards, rules and regulations adopted by the state board; "

And see *Wheeler v. School District # 20,* Colo., 535 P.2d 206, 209 (1975); *Adelt v. Richmond School District*, 250 Cal.App.2d 149, 58 Cal. Rptr. 151, 153 (1967); *Van Heusen v. Board of Education of City School District*, 26 A.D.2d 721, 271 N.Y.S.2d 898, 900 (1966).

were doing so. The teacher's expert witness, in essence, disagreed with the legislative policy which authorizes a teacher with respondent's certificate to be employed to teach seventh or eighth grade.

Respondent teacher appealed the school board decision to the circuit court under SDCL 13–46–1. SDCL 13–46–6 allows appellant a trial de novo after which "[T]he court shall enter such final judgment or order as the circumstances and every right of the case may require * * *." This statute would seem to direct a trial anew in circuit court, as if the matter were commenced there originally. It is now settled, however, that the circuit court hears evidence under SDCL 13–46–6 solely for the purpose of determining whether the school board decision was illegal.[9]

■■■■ The issue before the circuit court, on the trial de novo, is not whether the board decision was the wisest course, nor whether the evidence preponderates in favor of the board decision. Instead the circuit court takes evidence so that it may determine (1) whether the board possessed [executive] administrative power, by constitution or statute, to exercise discretion in making the decision, and if so (2) whether that discretion was exercised unreasonably, or arbitrarily, or was manifestly abused.[10] Without weighing the evidence the circuit court determines whether there is substantial evidence to support the board decision.[11]

■■■■ That we must review the circuit court judgment in this case with those same principles in mind [rather than under the "clearly erroneous" standard—SDCL 15–6–52(a)][12] was settled by *Mortweet v. Ethan Board of Education, Davison County, S.D.,* 241 N.W.2d 580 (1976).[13] Our review convinces us that the board did not act illegally. On the issue of whether the teacher was offered a position for which she was qualified, the board, for the reasons we have given, *supra,* could properly accept her 1971 certification as substantial evidence sufficient to support its conclusion that she was qualified for the new position offered. There was no evidence given that she was unqualified for the new position because of occurrences since 1971 which might tend to impeach her certification.[14] The testimony of respondent teacher's expert witness went only to the weight of the evidence to support the board decision, as did the fact that the teacher had always before taught fourth grade.

In February, 1975 the board notified respondent that her teaching contract would not be renewed. All steps required by the Continuing Contract Law were thereafter taken, resulting in a board decision in April 1975 not to renew her contract. She ap-

9. *Mortweet v. Ethan Board of Education, Davison County, S.D.,* 241 N.W.2d 580 (1976).

10. *Mortweet v. Ethan Board of Education, supra.* Compare *State ex rel. Ging v. Board of Education of City of Duluth,* 213 Minn. 550, 7 N.W.2d 544 (1943).

11. Substantial evidence means such relevant and competent evidence as a reasonable mind might accept as adequate to support a conclusion. *Application of Ed. Phillips & Sons Co.,* 86 S.D. 326, 195 N.W.2d 400, 405 (1972); and see SDCL 1–26–1(8).

12. *Schneider v. McLaughlin Independent School District, S.D.,* 241 N.W.2d 574, 578 (1976) does not hold otherwise because the court was careful to note that the issue was not raised.

13. We note this case was heard in the circuit court July 15, 1975. At that time SDCL 13–46–6 [trial de novo] as applied to a school board administrative decision had not been construed by this court. Although we are bound to follow *Mortweet,* we recognize it is indeed difficult for the trial court to be guided by precedent not available until after entry of the circuit court judgment.

14. The contrary would appear. Her University of South Dakota transcript indicated she earned at least seven college credit hours after issuance of her 1971 teacher certificate.

The legislature has made specific provision for suspension or revocation of the certificate for cause. SDCL 13–42–9 provided:

"The superintendent of public instruction shall have the power to revoke or suspend any certificate of any class or kind for any cause which would have presented (sic) [prevented] its issue, for plain violation of contract, gross immorality, incompetency, or flagrant neglect of duty."

pealed to the circuit court and a few days later the board offered her the contract to teach seventh and eighth grade. We need not decide whether the April board decision [reversed by the circuit court in July 1975] was valid, since the teacher's refusal to accept the contract subsequently offered terminated her re-employment rights with the district. The reasons assigned by the board at the April hearing for non-renewal of the fourth grade contract as shown in the record, were not inconsistent with its decision that the teacher was qualified to teach the higher grades.[15] There was no evidence the offer was made to force the teacher to resign.[16] Because we find the board decision to offer the new contract supported by substantial evidence, the fact that the new contract was offered only after an appeal was taken will not, without more, make the board decision arbitrary.[17]

On judicial review of a school board's exercise of discretion in carrying out a lawful administrative function, the court must presume the decision was one made in good faith. The burden is upon the party-opponent to overcome this presumption. *Schneider v. McLaughlin Independent School District*, S.D., 241 N.W.2d 574 (1976). We have determined, as a matter of law, that the board was entitled to regard the teacher's certification as substantial evidence of her qualification for the position offered. That being so, under the *Mortweet* standard of judicial review, the evidence will not support a conclusion that the board acted illegally, in bad faith, unreasonably, arbitrarily, or through an abuse of discretion. The judgment is therefore va-

cated and the cause remanded so that judgment may be entered accordingly.

DUNN, C. J., and ZASTROW and MORGAN, JJ., concur.

WOLLMAN, J., dissents.

WOLLMAN, Justice (dissenting).

In *Mortweet v. Ethan Board of Education*, S.D., 241 N.W.2d 580, we held that the de novo trial required by SDCL 13–46–6 permits an independent inquiry into the facts by the trial court for the purpose of passing on the legality of the board's decision. Surely such independent inquiry into the facts must encompass an implied authority on the part of the trial court to determine the credibility of witnesses in the process of deciding whether the school board's decision was arbitrary or capricious or based on an abuse of discretion, for if it does not then the appeal de novo under SDCL 13–46–6 is in reality nothing more than an appeal on the record, with the record in effect being reconstituted live before the trial court.

The trial court made an independent inquiry into the facts in the instant case and concluded that the board had abused its discretion and that its action was unreasonable, arbitrary and capricious. If we are not to render the independent inquiry procedure totally meaningless, we must accord deference to the trial court's findings.

As I read the record, there is no substantial evidence that the school board offered respondent the new contract in order to accommodate changes in enrollment, classroom size or available funds, or for any

---

**15.** Mrs. Collins spent six to six and one-half hours daily with her fourth grade class. The board acted because of parental complaints that she was not supportive, but negative with some of her fourth graders. When the board decided against continuing her in fourth grade, the seventh and eighth grade vacancy had not yet occurred. The Superintendent and the board considered Mrs. Collins overall a good teacher. Since she would be with seventh and eighth graders and not with any students over one or two hours daily, the board could reasonably believe that difficulties in fourth grade would not likely be a problem in the new sev-

enth and eighth grade position. Thus it was not unreasonable to offer her the position which became available subsequent to April 28. Moreover, it was consistent with a school policy of reassigning teachers within the school, where possible, to best utilize the staff on hand.

**16.** See *Goodwin v. Bennett County High School, supra; Mitchell v. Board of Trustees, supra.*

**17.** Cf. *Van Dyke v. Board of Education*, 115 Ill.App.2d 10, 254 N.E.2d 76 (1969).

other reason that might legitimately have warranted transferring respondent from the elementary school level to the junior high level. Rather, it is clear that the superintendent of schools recommended that respondent be offered the new contract in the hope that such a move would forestall litigation over the board's refusal to renew respondent's original contract. This was not a reasonable exercise of the board's power to reassign teachers, *Goodwin v. Bennett County High School Independent School District*, S.D., 226 N.W.2d 166, and should not be held to immunize the board from liability for having failed to renew respondent's continuing contract without good cause.

I would affirm the judgment in all respects.