Delmar SCHNABEL, Appellee,

v.

ALCESTER SCHOOL DISTRICT # 61–1
and the Board of Education of Alcester
School District # 61–1, Appellants.

No. 12773.

Supreme Court of South Dakota.

Submitted on Briefs March 13, 1980.

Decided Aug. 6, 1980.

Richard D. Hagerty, Yankton, for appellee.

Robert B. Frieberg of Frieberg, Frieberg & Peterson, Beresford, for appellants.

MORGAN, Justice.

This appeal stems from a judgment by the trial court which found that the Alcester School Board (Board) had abused its discretion in not renewing Delmar Schnabel's teaching contract and had thereby violated its staff reduction policy. We affirm.

The Alcester School District # 61–1 (District) hired Delmar Schnabel (appellee) to teach in its school system. During his eleven years on the faculty appellee primarily taught math courses, although he also taught German courses when offered by the school.

Appellee was notified that his contract would not be renewed for the 1977–78 school year. All procedural steps were complied with resulting in the Board's final decision from which the appeal was taken to the circuit court. There is no issue of administrative procedural deficiency, nor is there any dispute that the sole reason for the nonrenewal was staff reduction.

On appeal the trial court, after hearing the testimony adduced by the parties and considering the arguments of counsel, entered judgment for appellee determining that the Board had abused its discretion in not renewing appellee's contract.

No new teachers were hired for the 1977–78 school year. The math courses that appellee had taught were assigned to two other instructors, Mr. Webster and Mrs. Anderson.

In 1973 the Board had adopted an "Alcester Community Schools Staff Reduction Policy" which reads as follows:

In the event that staff reduction should become necessary, the Alcester School Board shall achieve the necessary staff reduction using the following procedure:

1. Attrition—every effort will be made to effect the reductions through normal attrition.

2. The Administration will attempt to communicate the situation confronting the district to the staff so as to allow the staff a reasonable opportunity, not to exceed two weeks from the date of communication, to present possible alternatives such as early retirements, part-time contracts, substitute status contracts, and/or other alternatives which could accomplish the same goals.

3. Except in those instances where an individual staff member is needed to maintain an existing program.

   a. Staff with emergency and/or temporary certification shall be released first.

   b. Non-degree certificated staff shall be released next.

   c. Professionally certificated teachers shall be released third. Persons who have been in the district long enough to be under the continuing contract law will have priority over those without continuing contracts in remaining employed.

4. If the foregoing conditions are equal, the Board hereby establishes the following criteria (not necessarily in order of priority) to be used in determining which teachers will be affected by staff reduction: student needs, financial condition of district, priority of programs, program elimination, recommendations of administrative staff, evaluation records, competency, qualifications, certification, longevity, educational background, and relevant considerations.

5. Employees being considered for non-renewal, demotion, or reassignment under the provisions of this policy shall be notified of such contemplated action according to the dates of the continuing contract law.

The scope of review of the trial court and of this court in school board appeals was extensively dealt with in *Moran v. Rapid City Area School Dist.*, 281 N.W.2d 595 (S.D. 1979). We held that the trial de novo, provided for in SDCL 13–46, is a limited-type of hearing to take evidence solely for determining the legality and not the propriety of the school board's decision.

■ We are cognizant of the great deference due to school boards' decisions in determining whether to renew a teacher's contract. "The power to contract with teachers is vested in the school board and the decision to renew or not renew a teacher's contract is not one for the judiciary. As long as the school board is legitimately and legally exercising its administrative power, the courts may not interfere with nor supplant the school board's decision-making process." *Moran*, supra at 598. The trial court in this case, however, found that the Board had abused its discretion by violating its own staff reduction policy. The Board had duly adopted its staff reduction policy as it had the power to do, and it must now follow it. The procedures set forth by the Board for it to follow in determining staff reduction according to its policies have the force and effect of law. "Generally, rules and regulations of an administrative agency governing proceedings before it, duly adopted and within the authority of the agency, are as binding as if they were statutes enacted by the Legislature." *Douglas Cty. Welfare Administration v. Parks*, 204 Neb. 570, 572, 284 N.W.2d 10, 11 (1979). See also *Davenport Community, etc. v. Iowa C. R. Com'n*, 277 N.W.2d 907 (Iowa 1979).

In its staff reduction policy, the Board sets out a sequential procedure for it to follow in "achiev[ing] the necessary staff reduction[.]" Numbers 1 and 2 of the policy are not at issue in this case. Number 3 determines who should be released first, based on three levels of teacher certification, subject only to the exception "where an individual staff member is needed to maintain an existing program." Number 4 comes into play only if the conditions set out in number 3 are equal.

Our first question then relates only to the third criterion, in particular 3.c. It is undisputed that Mrs. Anderson, an English major who was otherwise qualified to teach math, was not tenured under the continuing contract law. Appellee was. The issue then boils down to the question whether the retention of Anderson was necessary to maintain all existing programs and the retention of appellee would have prevented maintenance of all existing programs.

The trial court found in its Findings of Fact IX that "[a]ll existing programs could have been maintained by [Appellant] District had they re-employed [appellee] for the 1977–78 school year." The trial court then concluded that "[t]he [Appellants] abused their discretion in not renewing [appellee's] contract for the 1977–78 school year." Based on our examination of the record, we conclude that the trial court was correct, so we may not say that the trial court erred in making its determination.

The Board in adopting 3.c. created a general provision that gave priority to renewing teachers under continuing contract law over teachers not under continuing contract law, subject only to one exception, i. e., where an individual staff member is needed to maintain an existing program. As this court said in Lien v. Rowe, 77 S.D. 422, 426, 92 N.W.2d 922, 924 (1958): " ' "Exceptions, as a general rule, should be strictly, but reasonably, construed; they extend only so far as their language fairly warrants, and all doubts should be resolved in favor of the general provision rather than the exception." ' " (Citation omitted.) Or as the Iowa Supreme Court said in State v. Ricke, 160 N.W.2d 499, 500 (Iowa 1968), "one claiming an exception has the burden to show 'he comes fairly within the exception.' "

In making its determination that the staff needed to be reduced, and in ultimately deciding that it should let appellee go and retain Anderson, it was essential that "the school board's decision be based upon competent, credible evidence." Moran, supra at 602; Huffman v. Bd. of Ed. of Mobridge Ind. Sch. Dist., etc., 265 N.W.2d 262

(S.D. 1978). The superintendent of schools testified that if appellee was retained and Mrs. Anderson dismissed, existing programs in the school could be maintained. This conclusion was borne out by the fact that Mrs. Anderson, an English major, ended up teaching only one course in English, and the balance of her course load was math. The lone English course could have been assigned to other qualified teachers on the faculty and, in fact, another English course was added that was assigned to another teacher on the faculty. This would have left appellee teaching his math courses for which he was eminently qualified while still maintaining all existing programs. The Board did not show that it came fairly within the exception to its own rule. We agree, therefore, with the trial court and hold that the record does not contain substantial evidence in support of the Board's decision but, on the contrary, contains substantial evidence that the Board abused its discretion by violating its own staff reduction policy.

The Board claims that it utilized both numbers 3 and 4 of its staff reduction policy in making its determination not to renew Schnabel's contract. If that is in fact true, then the Board violated its own staff reduction policy by using number 4 since it may not rely on number 4 unless "the foregoing conditions are equal." Based on our examination of the record, we conclude that the "foregoing conditions" were *not* equal. Mrs. Anderson was not equal with appellee because she was not entitled to tenure under the continuing contract law, whereas he was.

We therefore affirm the judgment of the trial court.

DUNN, J., concurs.

HENDERSON, J., concurs in result.

WOLLMAN, Chief Justice, and FOSHEIM, Justice, dissent.

WOLLMAN, Chief Justice (dissenting):

As we held in Moran v. Rapid City Area School Dist., 281 N.W.2d 595, 598 (S.D.

1979), the trial de novo provided by SDCL 13–46 "differs from a true trial de novo in that the court may not substitute its judgment for that of the school board, and the court need not justify the school board's decision by a preponderance of the evidence received." When viewed in the light of the limited scope of the judicial review enunciated in the *Moran* case, the evidence in the instant case clearly supports the Board's decision not to renew appellee's contract.

The District's principal, whose responsibility it was for making teaching assignments and for making recommendations to the Board concerning course offerings, had recommended to the Board that the course in German be eliminated in view of the lack of student interest in that subject. It was his opinion that the District could not adequately maintain the existing seventh-grade English course had appellee been re-hired and Mrs. Anderson dismissed. It is clear from the record that the principal considered other alternatives before making the recommendation that appellee's position be terminated. It was for the Board to determine whether to accept this recommendation and to decide whether to eliminate the course in German and to make the adjustments in the teaching staff made necessary as a result of that decision.

I fear that the majority opinion will be interpreted as countenancing a scope of judicial review of decisions of school boards far broader than that set forth in *Moran*, supra; *Huffman v. Bd. of Ed. of Mobridge Ind. Sch. Dist., etc.*, 265 N.W.2d 262 (S.D. 1978); *Collins v. Wakonda Ind. School Dist. No. 1*, 252 N.W.2d 646 (S.D. 1977); and *Mortweet v. Ethan Bd. of Ed., Davison Cty.*, 90 S.D. 368, 241 N.W.2d 580 (1976). It is one thing to say that appellee was eminently qualified to teach math courses. It is quite another thing to hold that the seventh-grade English course could have been assigned to other qualified teachers, for that was a decision peculiarly within the Board's discretion, based as it was upon the recommendation made by one to whom the Board had entrusted the day-to-day administrative details of teacher assignments and curriculum recommendations. It was for the Board to determine what staff assignments would be required to maintain the existing program with respect to English courses.

Because I believe that there was ample competent, credible evidence to support the Board's decision, I would reverse the decision of the trial court.

I am authorized to state that Justice FOSHEIM joins in this dissent.