DALE NEAL, APPELLANT, V. SCHOOL DISTRICT OF YORK,
IN THE COUNTY OF YORK, IN THE STATE OF NEBRASKA, A
POLITICAL SUBDIVISION, APPELLEE.
288 N. W. 2d 725

Filed February 20, 1980. No. 42556.

Crosby, Guenzel, Davis, Kessner & Kuester, for appellant.

Larry R. Baumann and Fillman & Baumann, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

WHITE, J.

This is an appeal from a breach of contract action brought by plaintiff-appellant, Dale Neal, against the School District of York, Nebraska. At issue is the appellant's contract for the 1976-77 school year. The matter was tried to the District Court for York County, at the conclusion of which the court entered judgment for the defendant. We affirm.

Dale Neal held a teaching-employment contract with the School District of York for the school years 1973-74, 1974-75, and 1975-76. The contracts for teaching included coaching duties for added compensation. On March 19, 1976, the School District notified Neal the 1976-77 teaching contract would be amended to separate the coaching assignment or to terminate it. That letter set forth reasons supporting the amendment and further advised the plaintiff that he had a right to request a hearing before the board of education of the defendant School District.

At the hearing before the defendant School Dis-

trict, the board voted to amend the plaintiff's contract by offering a separate contract for the basketball coaching assignment. Two separate contracts were presented to the plaintiff, one for teaching and one for the basketball coaching assignment. The plaintiff signed and returned the contract for teaching employment but returned unsigned the other contract for employment. The plaintiff objected to language in the coaching contract which provided: "The continuing contractual provision in Nebraska School Law 79-1254 shall not apply and this provision is expressly waived. This one (1) year Contract in noway establishes any future expectations for coaching by Dale Neal at York High School. In this regard, due process procedures and just cause shall not be required to terminate this Contract prior to the filling of the head basketball coaching position for the 1977-78 school year." The board of education voted to reissue the contract for the basketball coaching assignment and required Neal to sign it and return it by noon, May 14, 1976, or the position would be declared open. Thereafter, Neal filed suit in the United States District Court for the District of Nebraska for an order restraining the defendant from offering Neal a contract in the form presented. Judge Warren K. Urbom issued an injunction enjoining the School District from requiring Neal to make an agreement for coaching duties in the precise words proposed by the School District. In response to the order, the board of education met and voted to reissue to the plaintiff a reworded contract for the basketball assignment. Neal did not execute this contract. On August 9, 1976, the School District hired another person to be basketball coach for the 1976-77 school year. Neal claims the School District was contractually obligated, pursuant to his contract of employment, to pay him the sum of $1,458 for his services as varsity head basketball coach for the 1976-77 school year.

Plaintiff contends: (1) That a contract to coach is a contract subject to the procedural and substantive requirements of section 79-1254, R. R. S. 1943, and (2) that the School District failed to comply with the provisions of section 79-1254, R. R. S. 1943.

The threshold issue before this court is whether section 79-1254, R. R. S. 1943, applies to a coaching contract. Whether a particular teacher is entitled to the procedural safeguards of section 79-1254, R. R. S. 1943, is a matter of state concern. While several federal cases have recognized that tenured state teachers have interests in continued employment that are safeguarded by due process, Board of Regents v. Roth, 408 U. S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548; Perry v. Sindermann, 408 U. S. 593, 92 S. Ct. 2694, 33 L. Ed. 2d 570; Slochower v. Board of Education, 350 U. S. 551, 76 S. Ct. 637, 100 L. Ed. 692; Wieman v. Updegraff, 344 U. S. 183, 73 S. Ct. 215, 97 L. Ed. 216, we are not bound by a federal court's interpretation of a state question. Chief Justice Burger underscores this point in his concurrence in Perry v. Sindermann, *supra*, and Board of Regents v. Roth, *supra*: "The Court holds today only that a state-employed teacher who has a right to re-employment under state law, arising from either an express or implied contract, has, in turn, a right guaranteed by the Fourteenth Amendment to some form of prior administrative or academic hearing on the cause for nonrenewal of his contract. Thus, whether a particular teacher in a particular context has any right to such administrative hearing hinges on a question of state law."

Section 79-1254, R. R. S. 1943, provides: "The original contract of employment with an *administrator* or a *teacher* and a board of education * * * shall require the sanction of a majority of the members of the board. Except for the first two years of employment under any contract entered into after February 26, 1975, any contract of employment be-

tween an *administrator* or a *teacher* who holds a certificate which is valid for a term of more than one year and a Class I, II, III, or VI district shall be deemed renewed and shall remain in full force and effect until a majority of the members of the board vote on or before May 15 to amend or to terminate the contract for just cause at the close of the contract period." (Emphasis supplied.)

Nothing in the statutory language or legislative history indicates the Legislature intended the position of coach to be within the applicable statutory definition of teacher or administrator entitled to protection. The introductory words to the statute speak of contracts with administrators or teachers. We do not find any reference to "coach" in the tenure statutes nor do the statutes containing the duties of a teacher in the school system list coaching among those recognized. § 79-101, R. R. S. 1943. The defendant argues that if coaches were found to be entitled to the protection of section 79-1254, R. R. S. 1943, for any reassignment or termination, then all extracurricular assignments would be included. Such a construction would interfere with the right of school authorities to make reasonable assignments and reassignments of a teacher's extracurricular duties. See, Richards v. Board of Education, 58 Wis. 2d 444, 206 N. W. 2d 597 (1973); Enstad v. N. Cent. of Barnes Pub. Sch., etc., 268 N. W. 2d 126 (N. D., 1978); Board of Education, Tucson H. S. Dist. No. 1 v. Williams, 1 Ariz. App. 389, 403 P. 2d 324 (1965); Pease, Aplnt., v. Millcreek Twp. Sch. Dist., 412 Pa. 378, 195 A. 2d 104 (1963). A limitation of that magnitude is a decision for the Legislature.

There is no applicable case law in Nebraska considering the issue in this appeal, but some decisions from other state courts are helpful. In Chiodo v. Board of Educ. of Special School Dist. No. 1, 298 Minn. 380, 215 N. W. 2d 806 (1974), the Minnesota court denied continuing contract protection to the

school coaching assignments to regularly employed teachers. Stang v. Independent Sch. Dist. No. 191, 256 N. W. 2d 82 (Minn., 1977), involved essentially the same factual pattern except the court used the statutory definition of "teacher" applicable to first-class cities and reached the same conclusion. As a later Minnesota case points out: "[B]oth decisions bifurcated the teachers' contracts between regular and 'extra duty' assignments and held that the position of 'coach' was not within the applicable statutory definition of 'teacher' entitled to protection." Rochester Ed. Ass'n v. Independent Sch. Dist., 271 N. W. 2d 311 (Minn., 1978).

In State v. Smith, 142 So. 2d 767 (Fla. App., 1962), after 3 years of service as both a teacher and coach, appellant was assigned as a full-time teacher but was relieved of further duties as coach of the football team. Although the appellant had been assigned the duty of serving as both teacher and coach, the court noted appellant's contract did not specifically include any services appellant rendered in connection with coaching. In holding that appellant was not entitled under his continuing contract of employment to continue in his position as football coach, the court said: "It is our conclusion that appellant's rights of tenure apply only to his employment as a teacher for which he held a certificate issued by the State Department of Education. Such tenure under the continuing contract of employment held by appellant does not extend to the right of reemployment as a coach or athletic director."

Goodwin v. Bennett Co. Ind. Sch. Dist., 88 S. D. 639, 226 N. W. 2d 166 (1975), further supports our holding. There, a high school teacher brought an action against the school district to require the district to grant employment as both a teacher and coach. The school board offered the teacher a contract for the ensuing school year which did not include the basketball coaching assignment. Holding

that the contract offer satisfied the teacher's re-employment rights under the South Dakota Continuing Teacher Contract Law, the court stated: "While Goodwin was entitled to an automatic renewal of his contract to teach, he is nevertheless subject to the authority of the school board under its general powers to direct and manage the schools of the district and the employees employed therein.

"A teacher, in acquiring a permanent status, does not thereby acquire a vested right to teach any certain class or in any certain school. The tenure laws do not interfere with the general power and right of school authorities to assign teachers to particular classes and to particular schools in accordance with their judgment and desire *reasonably exercised*."

In reviewing these cases, we find the analysis of the Chiodo court persuasive: "While all these decisions can be distinguished on their facts, or on differences in the tenure acts or certification requirements, they are significant in their unanimity in denying tenure to coaches and other similar positions." Chiodo v. Board of Educ. of Special School Dist. No. 1, *supra*.

Having determined the statute does not apply in this case, it is unnecessary for us to consider the second issue.

The judgment of the District Court is affirmed.

AFFIRMED.

KRIVOSHA, C. J., concurring.

I concur in the result reached by the majority in this case. I believe, however, that the opinion decides more than the issues presented and perhaps makes too sweeping a pronouncement.

The majority notes that the threshold issue before the court is whether section 79-1254, R. R. S. 1943, applies to "a coaching contract." The majority then concludes that "a contract to coach is not a contract subject to the procedural and substantive requirements of section 79-1254, R. R. S. 1943." While I con-

cur that the facts in this case justify reaching a conclusion that the contract to coach in this case was not intended to be covered by the provisions of section 79-1254, R. R. S. 1943, I am not prepared to say that in no instance might a contract "to coach" not be subject to the requirements of section 79-1254, R. R. S. 1943.

The majority presumes that calling one "a coach" thereby precludes the individual from being "a teacher" within the meaning of section 79-1254, R. R. S. 1943. Section 79-1254, R. R. S. 1943, provides in part: "Except for the first two years of employment under any contract entered into after February 26, 1975, any contract of employment between an administrator or *a teacher* who holds a certificate which is valid for a term of more than one year and a Class I, II, III, or VI district shall be deemed renewed and shall remain in full force and effect until a majority of the members of the board vote on or before May 15 to amend or to terminate the contract for just cause at the close of the contract period." (Emphasis supplied.)

In reaching its conclusion, the majority apparently concludes that in order for one to be "a teacher" the individual must teach what is generally recognized and traditionally thought to be a course taught by "a teacher." The evidence in this case does not provide us with a sufficient basis to reach the conclusion that in every instance one who is called "a coach" has not been employed to perform a function intended to be covered by section 79-1254, R. R. S. 1943, and in fact is "a teacher." As an example, in Class IV and V school districts the term teacher means and includes all full-time certificated "educational employees" and even includes full-time nurses duly licensed by the State of Nebraska. See § 79-1255, R. R. S. 1943.

It is conceivable to me that one may be employed with the title of "coach" and in fact be a teacher in-

tended to be protected under the provisions of section 79-1254, R. R. S. 1943. It is not beyond the realm of possibility that larger school districts may employ an individual whose principal duty and basis of employment is his ability to teach athletes how to perform in an athletic event and to fill in the remainder of the "teacher's time" with courses in driver's education or something similar. Under the majority's opinion a school district might be permitted to eliminate the teacher's employment as "coach" and limit his duties solely to one class in driver education. Such action might totally defeat the purpose of section 79-1254, R. R. S. 1943. Whether the provisions of section 79-1254, R. R. S. 1943, apply or not should not depend upon whether the individual is called "teacher" or "coach." The deciding factor should be what the principal basis of the employment was, what function was principally to be performed by the school employee, and whether the employee has the right to refuse the assignment. If in fact the evidence discloses that the involvement in athletics is indeed extracurricular not only for the students but for the employee as well, and one which the employee could have refused and still retained principal employment with the school district, I would agree with the majority. On the other hand, if the evidence in a particular case discloses that the principal motivation for employment of the educational employee was his or her ability to "coach" and the additional duties were simply to fill out the day so that the coaching activity was clearly not "extracurricular" for the employee even though it may in fact be extracurricular for the student, I would hold to the contrary. In today's teaching scheme it is not unreasonable to assume that a "teacher" may be hired as a "coach" to teach physical education as well as basketball or football. That would be no different than hiring a "teacher" to teach music and lead the band. I have some diffi-

culty understanding why one who is hired as athletic director of a high school with duties to teach football as well might not have the benefit of section 79-1254, R. R. S. 1943, just because his contract describes him as a "coach." The title standing alone should not be the deciding factor. The actual work involved should be the critical issue.

That is why I have difficulty with the language in the case of Rochester Ed. Ass'n v. Independent Sch. Dist., 271 N. W. 2d 311 (Minn., 1978), cited by the majority. The Minnesota case provides in part: "[B]oth decisions bifurcated the teachers' contracts between regular and 'extra duty' assignments and held that the position of 'coach' was not within the applicable statutory definition of 'teacher' entitled to protection." That would be true if in fact in every instance it was clear that the coaching position was extra duty and not the regular assignment. We have no way of knowing that to be the case in every situation.

It is likewise for the same reason that I find fault with the decision of State v. Smith, 142 So. 2d 767 (Fla. App., 1962), cited by the majority, wherein apparently the Florida court held: "Such tenure under the continuing contract of employment held by appellant does not extend to the right of reemployment as a coach or athletic director." To be sure, in some school districts the position of athletic director may be no different than the position of counselor or department chairman. I suspect we would not hesitate to find that either a department chairman or a counselor who devoted the principal part of his time to fulfilling that function would be covered under section 79-1254, R. R. S. 1943. Likewise, I find the language in Chiodo v. Board of Educ. of Special School Dist. No. 1, 298 Minn. 380, 215 N. W. 2d 806, cited by the majority, too broad for this case. I would not declare in advance that anyone called "coach" is not a "teacher" entitled to the benefits of

the tenured teacher act. I would have simply concluded that based upon the facts in this case, it appears that Neal's work as coach was indeed extracurricular and one which he could refuse to do without jeopardizing his position as a teacher and therefore not covered within the tenured teacher act. I would not, however, have gone beyond that finding.