**LEMMON EDUCATION ASSOCIATION, Appellant,**

v.

**LEMMON SCHOOL DISTRICT NO. 52–2 and Lemmon Board of Education, Appellees.**

No. 17423.

Supreme Court of South Dakota.

Dec. 18, 1991.

Linda Lea Viken of Finch, Viken, Viken and Pechota, Rapid City, for appellant.

Ronald R. Johnson, Lemmon, for appellees.

PER CURIAM.

Lemmon Education Association (teachers) appeals a declaratory judgment in fa-

vor of Lemmon School District and Lemmon Board of Education (Board) in a dispute over Board's method of offering teaching contracts for the 1990/91 school year. We are confronted, basically, with this question: Did Board comply with South Dakota's continuing contract law (SDCL ch. 13–43)? Under the facts of this appeal, we hold it did. Accordingly, we affirm the trial court.

## FACTS

From 1974 to April 1990, Board offered separate contracts to teachers for their teaching duties and extracurricular activities. Although there was a clause in the teaching contracts providing that, "... [t]he [teacher] agrees to perform the duties of teaching the grade or subjects *and directing the activities assigned by the [Board]* ...," (emphasis added ours) there was no other linkage between the two contracts and, they were often not offered at the same time.

SDCL 13–43–9.1 and 13–43–10 provide that tenured teachers are entitled to renewal of their contracts under the same terms and conditions as in their previous contracts, unless the board gives a teacher notice of nonrenewal of a contract. No notices of nonrenewal were given to the teachers affected in this case. However, on April 9, 1990, Board voted to change its procedure for offering teaching and extracurricular activity contracts. Both contracts were offered at the same time. Language was added to the teaching contracts providing that, "[t]o be accepted, this contract and the contractual agreement in regard to [the extracurricular activity], representing your [continuing] contract from the previous year, must both be signed and in the hands of the school board on or before *May 10, 1990.*" (emphasis original). Similar language was added to the extracurricular activity contracts providing that, "[t]o be accepted, this contract and the contractual agreement in regard to the teaching position representing your continuing contract from the previous year must both be signed and in the hands of the school board on or before *May 10, 1990.*" (emphasis original). Thus, a teacher's acceptance of

one contract was contingent on his acceptance of both contracts.

On May 4, 1990, teachers filed a complaint in a declaratory judgment action against Board. Teachers alleged that the change in Board's manner of offering their contracts altered past practices that allowed teachers to reject an extracurricular activity without losing their teaching contract and allowed them to continue their teaching duties regardless of how they performed an extracurricular activity. In their complaint, teachers asserted Board's linkage of teaching contracts with extracurricular activity contracts violated the continuing contract law provision requiring Board to renew contracts under the same terms and conditions as in the previous year. SDCL 13–43–10. Accordingly, teachers sought a declaratory judgment that: The changes in the requirements relative to the extracurricular activity contracts constituted a variance from the previous year's terms and conditions of employment; Board could not condition an offer of a teaching position for the 1990/91 school year on the acceptance of an extracurricular activity contract; and, Board could not nonrenew a teaching contract based upon a teacher's performance of an extracurricular activity.

The matter was tried before the trial court on August 6, 1990. On October 9, 1990, the trial court entered its memorandum opinion holding that Board did not act improperly in tying the teaching and extracurricular activity contracts together. Findings of fact, conclusions of law and a judgment were subsequently entered in favor of Board and teachers appeal.

## DECISION

We are confronted with this specific issue: Did Board violate the provisions of the continuing contract law by changing its method of offering teaching and extracurricular activity contracts for the 1990/91 school year?

Teachers argue that the continuing contract law requires Board to continue offering separate contracts for their teaching

duties and extracurricular activities. Teachers assert that Board's action in linking the two contracts altered prior practice in two key respects: First, teachers no longer have a right to reject an extracurricular activity without losing their teaching contract; and, second, teachers can now have their teaching contracts nonrenewed for deficient performance of an extracurricular activity.

■ This case can be resolved based upon settled law and reference to the facts. Teaching contracts, in the settled record for years prior to 1990/91, all contain clauses providing that, "... [t]he [teacher] agrees to perform the duties of teaching the grade or subjects *and directing the activities assigned by the [Board] ...*" (emphasis added ours). Thus, Board always retained the authority to assign teachers extracurricular activities and, in essence, make acceptance of their teaching contracts contingent on their acceptance of an extracurricular activity contract. Even in those years prior to 1990/91, a teacher's refusal of an extracurricular activity constituted a breach of the explicit provisions of the teaching contract.

■ Although teachers cite *MEA/ AFSCME Local 519 v. Sioux Falls*, 423 N.W.2d 164 (S.D.1988) for the proposition that the past practice of Board in allowing them to refuse an extracurricular activity reflects the actual understanding of the parties, *MEA* involved the interpretation of a collective bargaining agreement. Such cases apply a narrow standard of review and do not necessarily utilize, "ordinary principles of contract construction[.]" *Loveless v. Eastern Air Lines, Inc.*, 681 F.2d 1272, 1280 (11th Cir.1982) (cited in *MEA, supra)*. Ordinary principles of contract construction provide that:

If and when the instrument is found by the court to be ambiguous, *then* the admission of parol or extrinsic evidence shall be governed by these rules:

If the intention of the parties is not clear from the writing, then it is necessary and proper for the court to consider all the circumstances surrounding

the execution of the writing *and the subsequent acts of the parties*[.]

*Haggar v. Olfert*, 387 N.W.2d 45, 48 (S.D. 1986) (emphasis added ours) (quoting *Jensen v. Pure Plant Food Intern., Ltd.*, 274 N.W.2d 261, 263–64 (S.D.1979)).

Here, teachers' contracts prior to 1990/91 were clear, certain, and unambiguous in requiring that they accept extracurricular activity assignments. Accordingly, resort to subsequent acts of Board, which allowed teachers to reject an extracurricular activity, is not necessary to properly interpret the contracts. Under the plain language of the contracts, teachers had no right to reject extracurricular activity assignments even prior to 1990/91. As a result, the contracts for 1990/91 requiring them to accept an extracurricular activity as a condition for acceptance of their teaching contracts did not vary from contracts for previous years. Teachers' arguments in this regard provide no basis for finding a violation of the continuing contract law in Board's method of offering the 1990/91 teaching contracts.

■ Teachers' final argument is that the joint offering of the 1990/91 teaching and extracurricular activity contracts allows them to have their teaching contracts nonrenewed for deficient performance of an extracurricular activity and this is a variance from their contracts in prior years.

This argument is resolved by this Court's decision in *Reid v. Huron Bd. of Educ.*, 449 N.W.2d 240 (S.D.1989). In *Reid*, this Court held that the provisions of the continuing contract law are equally applicable to the extracurricular portions of a teacher's contract. In reaching this conclusion, this Court perceived no distinction between a teacher's curricular and extracurricular responsibilities, observing:

Aside from the statutory authority for this position, it also makes common sense. How can the physical education teacher instructing students on basketball in gym class be a teacher, yet the coach instructing student/athletes on the same subject after school is not?

*Reid*, 449 N.W.2d at 243. Moreover, at several points within *Reid*, this Court re-

ferred to the coaching or extracurricular aspects of a teacher's position as "provisions," or "portions" of a teacher's contract. *See, e.g., Reid,* 449 N.W.2d at 243, 244. Thus, under *Reid,* a teacher's extracurricular responsibilities are *not* severable and distinct from a teacher's teaching responsibilities but are an equal part and parcel of those responsibilities within the entirety of the teacher's contract. For this reason, a teacher is no less subject to nonrenewal of a teaching contract for deficient performance as a basketball coach than he or she would be for deficient performance as a history teacher.

This view is reinforced by this Court's holding in *Sutera v. Sully Buttes Bd. of Educ.,* 351 N.W.2d 457 (S.D.1984). In *Sutera,* this Court reviewed the nonrenewal of the contract of a tenured social sciences teacher under a reduction in force policy. The nonrenewal occurred because, although able to coach boy's basketball, the school board had determined the teacher was not *qualified* to coach based upon the fact that a number of parents had opposed his reemployment as a coach in an earlier school year. This Court disagreed, observing that Sutera had been a very successful coach, that he had resigned as a head coach of his own accord and that he had retained some coaching duties every year of his employment.

■ Teachers in this instance proffer no argument as to why a similar analysis would be unworkable if one of them were to face nonrenewal of their teaching contract for a purported deficiency in performance of an extracurricular activity. Such an analysis would be consistent with this Court's standards for reviewing the nonrenewal of any teacher, i.e., whether the nonrenewal was unreasonable, arbitrary or a manifest abuse of discretion and whether it was supported by substantial evidence. *Jager v. Ramona Bd. of Educ.,* 444 N.W.2d 21 (S.D.1989). Thus, resolution of the question of whether a teacher's teaching contract was improperly nonrenewed for deficient performance of an extracurricular activity becomes dependent upon the facts of the particular case and whether, based upon those facts, the decision to nonrenew was unreasonable, arbitrary or a manifest abuse of discretion.

*Sutera* and *Reid* make clear that teachers in this case have always faced the possibility of nonrenewal of their teaching contracts for deficient performance of an extracurricular activity. Thus, Board's method of offering teaching contracts for the 1990/91 school year raised no variance with contracts issued in prior years. It follows that there was no violation of the continuing contract law in Board's joint offering of the teaching/extracurricular activity contracts for the 1990/91 school year.

Affirmed.

MILLER, C.J., and WUEST, HENDERSON, SABERS and AMUNDSON, JJ., participating.