**BOARD OF EDUCATION OF ERLAN-GER–ELSMERE SCHOOL DISTRICT, James E. Molley, Harold C. Ensor and William Steiden, Appellants,**

v.

**Bill CODE, Appellee.**

**No. 2000–SC–0104–DG.**

Supreme Court of Kentucky.

Aug. 23, 2001.

Rehearing Denied Nov. 21, 2001.

---

Michael O'Hara, Suzanne Cassidy, O'Hara, Ruberg, Taylor, Sloan & Sergent, H. Lawson Walker, II, Frost Brown Todd LLC, Covington, for appellants.

JoEllen S. McComb, Brooks & McComb, Lexington, for appellee.

WINTERSHEIMER, Justice.

This appeal is from an opinion of the Court of Appeals which affirmed a judgment of the circuit court granting summary judgment to Code on his claim that he was entitled to a formal evaluation prior to the decision not to renew his contract as head basketball coach at Lloyd Memorial High School in the Erlanger–Elsmere School District.

The principal issue is whether Code, as a tenured teacher who was coaching boys' basketball, was entitled to a written evaluation of his performance in his capacity as head basketball coach as a condition of nonrenewal for the coaching position. Also presented is whether Code was entitled to formal evaluation as a coach pursuant to the Professional Negotiation Agreement between the Board of Education and district teachers and under local board policy.

The Board of Education contends that the evaluation requirements of KRS 156.101 and 704 KAR 3:345 apply only to the performance of Code as a classroom teacher and not to his extra service as basketball coach.

KRS 156.101(6) provides:

The certified employee evaluation programs shall contain the following provisions:

(a) Each certified school employee ... shall be evaluated by a system developed by the local school district and approved by the Kentucky Board of Education ...

It is undisputed that Code had always received the required evaluations regarding his classroom performance as a certified teacher but had not received such evaluations respecting his performance as basketball coach. The circuit court order and judgment which was adopted verbatim by the Court of Appeals interpreted the requirement of 702 KAR 7:090 that a basketball coach must be a certified teacher and a member of the regular school faculty, as recognition that coaches have instructional, management and leadership responsibilities to student athletes. The circuit court stated that the purpose of the evaluation system is to protect teachers from arbitrary actions to remove them without cause from their various responsi-

bilities. A dissenting opinion was filed in the Court of Appeals by Judge David Knox who indicated that the purpose of the statutes and regulations was to assure the competency of classroom teachers only, and not athletic coaches. He also expressed concern that the rationale requiring a single overall evaluation addressing a teacher's dual role might allow a competent teacher to be discharged for being an incompetent coach. This Court accepted discretionary review.

Code was first hired as a teacher in 1975 at which time he also became head basketball coach. Later, he became a tenured teacher under a continuing service contract. He served as basketball coach from 1975 until 1984 when he resigned, but was then rehired as coach in 1988. He continued as head basketball coach under annual appointments until his termination in 1993. He was also golf coach from 1989 until he was not renewed for that position after the 1991–92 school year. Code did not pursue his grievance regarding his termination as golf coach beyond the circuit court level.

In 1993, Code received a letter from the high school principal informing him that he would not be recommended for renewal as head basketball coach. There were specific reasons stated in the letter for the nonrenewal recommendation. Code later received written notification from the superintendent that the recommendation of the principal had been accepted and that as a result of his reduction in duties, his salary for the following year would be as a classroom teacher only, rather than as a teacher and coach. Code filed a grievance under the Professional Negotiation Agreement concerning his termination as basketball coach and exhausted his administrative remedies under the PNA. On or about November 1, 1995, Code obtained disability status and terminated his position as teacher with the school district for reasons unrelated to this appeal.

We agree with the Court of Appeals and the circuit court that Code received timely notice of the reasons for his termination pursuant to KRS 161.760(3). At all times relative to this appeal, a head basketball coach of an interscholastic team must have been a certified teacher and a member of the regular school faculty pursuant to 702 KAR 7:090. This Court takes judicial notice of the fact that there have been recent changes in the requirement that all head coaches must be certified teachers and that fact does not affect the resolution of the dispute in this case.

Code challenged the reasons stated in the letter from the principal that he had demoralized students on the basketball team because he allegedly discouraged student athletes from competing in other sports and he previously had a conflict with the football coaching staff on weight-lifting philosophies. Code argues that the issues presented here are narrow as to whether state law or board policy required the district to evaluate the performance of head coaches before removing them from such positions.

## I. Failure to Evaluate as Coach

■ The failure of the Board of Education to provide Code a formal written evaluation for an extra service coaching assignment as head basketball coach does not void the decision of the Board to remove him from his coaching position. The pertinent statutes and regulations do not require any formal written evaluation of coaching or any other extra service duties before a decision is made not to renew the extra service duty contract of the certified teacher. To require that a school district's provision of athletic programs be evaluated in the same way as educational programs by means of formal written evaluation of

coaches is to adopt a program that goes beyond the legislative purposes set out in the evaluation requirements of KRS 156.101, which is now KRS 156.557. The clear and unambiguous language of KRS 156.101(6)(c)(6) indicates that it was the intention of the General Assembly to require evaluations of teaching or administrative positions of certified teachers only. It states:

(6) The evaluation system shall include a plan whereby the person evaluated is given assistance for becoming more proficient as a teacher or administrator....

The evaluation mandate is limited to those educational activities of teaching and administration. The evaluation procedures relate to proper techniques for effectively evaluating certified school employees. Certified employees are "teachers, administrators and other support staff." 704 KAR 3:345 Section 1(1) and (2) define the positions and job categories to be evaluated. The position of coach is not included in any of these definitions either expressly or by examples or commentary. The General Assembly was interested in providing the public with information in regard to how certified school personnel were performing in the education of children, as distinguished from providing information about how a high school sports team was performing. The definition of evaluation noted in KRS 156.101 does not require that a certified teacher be formally evaluated as a coach when he is being evaluated as a teacher. Teachers are to be evaluated in their teaching and learning situations and administrators and other support staff are to be evaluated in their "leadership and management situations."

The relevant statutes and regulations demonstrate that no formal evaluation of a coach or any other extra service duty is required before a decision not to renew the extra service duty of a teacher for the coming school year may be made. The instructional and educational requirements on a school district are not the same as those relating to a program of athletics.

KRS 161.760 provides the formula for school administrators to review the staffing of any particular school. The same statute provides protection for teachers from any arbitrary action by the administrators by requiring that a superintendent provide both timely notice and a reason for any personnel change. The trial judge correctly determined that Code had received proper notice of the decision by administrators not to reappoint him as head basketball coach in 1993. Code did not seek review of this decision of the circuit court.

The regulations define "position" as a professional role in the school district, citing examples as teacher, secondary principal and supervisor of instruction. 704 KAR 3:345 § 1(12). The term "job category" is defined as a group or class of positions with closely related functions and cites as examples, principal, coordinator and director. 704 KAR 3:345 § 1(13). The designation "coach" is not included in any of these definitions either expressly or by examples. This omission provides evidence to support the conclusion that the General Assembly intended to require evaluations of professional staff performing the functions of teaching and administration.

The same message is found in the definition section of the regulation providing for standards of performance in that it refers to effective teachers or administrators. Cf. 704 KAR 3:345 § 1(11).

We find no merit in the argument by Code that the definition of evaluation requires that the process mandated by KRS 156.101 relates to any formal evaluation as coach when he is being evaluated as a

teacher. The definition of an evaluation in 704 KAR 3:345 states in pertinent part:

> The process of assessing or determining the effectiveness of the performance of the certified employee in a given teaching and learning or leadership and management situation.

The evaluation system provided by KRS 156.101 and 704 KAR 3:345 should be read in conjunction with the description of those certified employees who are to be evaluated: teachers, administrators, and other support staff. The regulation provides that the purpose of the evaluation is to provide a list of performance criteria characteristic of effective teaching or administrative practices.

The fact that at the time of this dispute, head coaches of major high school athletic activities were required to be certified teachers does not mandate that a certified teacher who is also a coach must be evaluated as a coach pursuant to KRS 156.101.

The regulation requiring the appointment of certified teachers to certain coaching positions does not contain any reference to KRS 156.101, and its requirements of a formal evaluation. 702 KAR 7:090 does not contain any independent requirement for an evaluation of coaches who are also certified teachers. It is the certification as a classroom teacher, and not the position as coach, which establishes a person as a certified school employee under both the regulation and the statute. It is such status which gives rise to evaluation. As noted in the dissenting opinion by Judge Knox, the evaluation is required solely for the purpose of assessing his qualifications as a teacher.

*Thompson v. Board of Education of Henderson County,* Ky., 838 S.W.2d 390 (1992), stated that the purpose of the Kentucky Effective Instructional Leadership Act, of which KRS 156.101 is a part, is to encourage and require the maintenance and development of effective instructional leadership in the public schools. The goal of the law is to improve the quality of educational services and does not address in any way extracurricular school activities including high school athletics.

We cannot accept the arguments put forward by Code which would impose on the school districts an evaluation requirement that is not mandated by either statute or regulation. The law provides direction for developing the evaluation of teachers, but it does not provide standards for evaluating coaches. The creation of such a system by judicial fiat could produce an absurd result in which a competent teacher could be fired for being an incompetent coach. Such a result is not the intention of the statutes and regulations.

## II. Professional Negotiations Agreement

■ The failure of the school board to formally evaluate Code as a coach prior to deciding not to reappoint him as head basketball coach did not violate the agreement between the Board of Education and the teachers of the district embodied in the Professional Negotiations Agreement.

The preamble to the agreement states in part, "The focus will be on the development of the student so as to meet the needs of the individual students and to attain the highest level of academic achievement." The clear language of the PNA demonstrates that it is for the purpose of improving the scholastic performance of all of the students, as distinguished from the athletic performance of some of the students. As noted by the circuit judge, the provisions of the PNA were not in conflict with the requirements of either KRS 156.101 or 704 KAR 3:345. The PNA has no requirement that coaches

receive any type of evaluation for their coaching abilities.

A review of the Erlanger–Elsmere School Performance Evaluation booklet indicates no mention of evaluation of school athletic coaches. The booklet reflects the implementing regulations of 704 KAR 3:345 and KRS 156.101. As with the statutes and regulations otherwise mentioned, the booklet makes repeated reference to teachers and administrators and no reference to coaches for evaluation purposes.

It should be understood that the performance and retention of coaching duties, for which a teacher may receive a salary supplement, are subject to the approval of school administrators. KRS 161.760 requires school superintendents to follow a process of notifying a teacher of a reduction of his or her duties, particularly if that reduction results in a lower annual salary for the teacher. The statute requires that notice of such a reduction of duties must be given by May 15 of the school year preceding the effective date of the reduction. If the teacher will receive a lower salary due to the reduction, a statement of the reasons for the reduction must be given.

We cannot accept the assertion by Code that he was entitled to a formal evaluation on the grounds that "but for his valid teaching certificate … he would not have been eligible to serve as head basketball coach...." It is too much of a leap of logic to conclude that teachers who accept extra service assignments as coaches must receive formal written evaluation both of their teaching performance and their coaching performance.

As noted in *Thompson, supra,* the purpose of an evaluation appeals panel is to review the job performance of a teacher in order to assure that the evaluation performance was fair. Again, there is no men-

tion of any responsibilities or criteria for evaluating coaches.

It is clear that the General Assembly has amended the statutes in question on a variety of occasions and has not chosen to incorporate any additional evaluations for coaches. Consequently, this Court is required to interpret the statute as written and rewritten on multiple occasions. If the General Assembly desired to require a formal evaluation of coaching duties, it could have included such language in the statute. For a decision in accord with the one we reached today, *see Neal v. School District of York,* 205 Neb. 558, 288 N.W.2d 725 (Neb.1980), in which the Nebraska Supreme Court held that nothing in the statutory language or legislative history indicated that the legislature intended that the position of coach was within the applicable statutory definition of teacher or administrator.

Nothing in our decision should be construed as a denigration of the great responsibilities which coaches and other moderators of extracurricular activities at all levels bear toward the students that they encounter in the various athletic programs. However, the mandate of the law as presently written is directed to academic and scholastic activities for all the students as distinguished from athletic programs for some of the students. If the General Assembly wishes to establish appropriate standards for the evaluation of coaches it certainly could do so in the future.

It is the decision of this Court that a certified school teacher who received formal teaching evaluations is not entitled to formal evaluations for extra service coaching assignments before a school district may remove him from his coaching position.

The decisions of the Court of Appeals and the circuit court are reversed. The

failure to evaluate a teacher as a coach does not violate the statutes or regulations, nor the Professional Negotiation Agreement between the school board and the teachers of the district.

All concur.