**Affirmed and Memorandum Opinion filed September 8, 2022.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-22-00385-CV

---

## IN THE INTEREST OF Q.R.W. A/K/A Q.W. AND S.R.W., CHILDREN

---

**On Appeal from the 313th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2021-00628J**

---

## MEMORANDUM OPINION

In this appeal from a judgment terminating the parent-child relationship, the question presented is whether the evidence is legally and factually sufficient to support the trial court's predicate and best-interest findings. For the reasons given below, we conclude that the evidence is sufficient, and we affirm the trial court's judgment.

## BACKGROUND

In February 2021, the Department received a referral regarding the medical neglect of the Mother's Son, who at that time was twenty-two months old. The

referral indicated that the Mother had brought the Son to a telehealth visit, complaining that the Son was unable to stand or walk. The doctor ordered a battery of tests because the Son should have begun standing at around nine months of age and walking at around one year of age. The Mother scheduled seven appointments for the Son, but she cancelled all of them.

By March 2021, the Mother had given birth to the Daughter. And by April 2021, the entire family was found living in a tent. Law enforcement discovered that the tent was hot, that the children were sweating, and that the Son was crying. The children were removed from the tent and placed with a foster family.

The Mother was given a family service plan with the goal of reunification. Under the terms of that plan, the Mother was required to provide proof of stable housing and employment. After she failed to comply with these terms, the Department moved to terminate her parental rights.

The Mother received notice of the termination hearing, but she did not personally attend it. Her counsel appeared in her stead, and he called no witnesses on behalf of the Mother.

At the end of the hearing, the trial court orally announced that the Mother's parental rights should be terminated with respect to both of her children on predicate grounds (D) and (O). *See* Tex. Fam. Code § 161.001(b)(1)(D) (knowingly placing or allowing the children to remain in conditions or surroundings that endangered their physical or emotional well-being); Tex. Fam. Code § 161.001(b)(1)(O) (failing to comply with the provisions of a court-ordered service plan). However, when the trial court entered its written judgment, the predicate grounds were identified as (E) and (O). *See* Tex. Fam. Code § 161.001(b)(1)(E) (engaging in conduct or knowingly placing the children with persons who engaged in conduct that endangered their physical or emotional well-being).

2

The Mother now appeals from this written judgment.

## PREDICATE FINDING

To terminate the parent-child relationship, the trial court must make two findings. *See In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). First, the trial court must find that a predicate ground for termination has been satisfied, which typically requires proof by clear and convincing evidence that the parent has either committed a prohibited act or has failed to perform a required act. *See* Tex. Fam. Code § 161.001(b)(1). If the trial court finds such a predicate ground for termination, the trial court must then find by clear and convincing evidence that termination is in the child's best interest. *See* Tex. Fam. Code § 161.001(b)(2).

The trial court here orally found that the Mother's rights should be terminated on the predicate grounds (D) and (O), but in its written judgment, the trial court found that the Mother's rights should be terminated on the predicate grounds (E) and (O). The trial court's written findings control over its conflicting oral findings. *See Kaur-Gardner v. Keane Landscaping, Inc.*, No. 05-17-00230-CV, 2018 WL 2191925, at *4 (Tex. App.—Dallas May 14, 2008, no pet.) (mem. op.).

The Mother argues in her appellate brief that the evidence is insufficient to support a finding under predicate ground (D), without ever acknowledging that the written judgment does not cite that predicate ground. In fact, the Mother does not even address in her brief the trial court's finding under predicate ground (E). Nevertheless, predicate grounds (D) and (E) are related in that they both focus on child endangerment. We will construe the Mother's appellate argument as a challenge to the sufficiency of the evidence supporting predicate ground (E).

A parent "endangers" her child for purposes of predicate ground (E) if the parent exposes the child to loss or injury. *See In re M.C.*, 917 S.W.2d 268, 279 (Tex.

3

1996) (per curiam). Under this standard, endangerment occurs even if the parent did not direct her conduct at the child and even if the child did not actually suffer injury. *Id.*

A finding under predicate ground (E) must be supported by clear and convincing evidence, which is greater than the simple preponderance standard that applies more commonly in civil cases. *See* Tex. Fam. Code § 161.001(b)(2). Under the standard for clear and convincing evidence, the measure or degree of proof must produce in the mind of the trier of fact a firm belief or conviction that the allegation sought to be established is true. *See* Tex. Fam. Code § 101.007. This heightened burden of proof results in a "correspondingly searching standard of appellate review." *See In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018).

When reviewing the legal sufficiency of the evidence in a parental termination case, we consider all of the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that its finding was true. *See In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could have done so, and we disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* This standard does not mean that we disregard all evidence that does not support the finding. *Id.* When deciding whether the finding is supported by clear and convincing evidence, we must also consider undisputed evidence contrary to the finding. *Id.*

In a factual-sufficiency review, we give due consideration to both the disputed evidence contrary to the finding as well as all of the evidence favoring the finding. *Id.* The evidence is factually insufficient if, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding

4

is so significant that a factfinder could not reasonably have formed a firm belief or conviction. *Id.*

The evidence here showed that the Son was born in California, and that he was the subject of an investigation in that state because the Mother was homeless. The Mother moved to Texas, where she has no family, and lived occasionally in a hotel, or in a tent just outside of the hotel.

The family was located in that tent in April 2021, by which time the Mother had recently given birth to the Daughter. When law enforcement discovered the family, the tent was hot, and the children were dehydrated. The Son in particular had been suffering from developmental delays. He was underweight, and though nearly the age of two, he was wearing clothes designed for children who were twelve months old—and even those clothes were still too large. Also, the Son was could not stand or walk, and he was nonverbal.

The Son's physical ailments were resolved after he was placed in foster care. Within a month, he had gained weight and he was standing and walking. He also received speech therapy, from which he was successfully discharged. The Foster Dad testified that doctors could not find any underlying medical or genetic abnormalities that would explain the Son's issues. The doctors opined that the Son had failed to thrive while in the Mother's care simply because of a lack of opportunity and a lack of proper nutrition.

The Foster Dad testified that the Daughter also had visible signs of malnourishment when she was first placed in his care. But as with the Son, the Daughter gained weight after receiving proper nutrition.

Because the Mother did not personally attend the trial, there is no countervailing testimony from her. Nevertheless, the Mother suggests in her brief

that her parental rights were terminated because she and her family were living in poverty, which is insufficient to demonstrate that she endangered her children. This argument fails to acknowledge the evidence that the Mother was referred to a shelter, which could have assisted in her financial struggles, but that she consciously refused that offering because she opposed the shelter's rules. Also, there was evidence that the Mother knew that the Son was experiencing physical hardships, yet she consciously cancelled medical appointments that were intended to help him.

Considered in the light most favorable to the judgment, this evidence is legally sufficient to support the trial court's finding that the Mother engaged in conduct that endangered the physical and emotional well-being of her children. Further, in view of the entire record, we conclude that any disputed evidence is not so significant as to prevent the trial court from forming a firm belief or conviction that termination was warranted under predicate ground (E). We accordingly conclude that the evidence is legally and factually sufficient to support the trial court's finding. *See In re J.R.*, 171 S.W.3d 558, 578 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("Failure to maintain a stable home, combined with failure to provide for the children's needs, may also support a finding under subsection 161.001(1)(E)."); *see also C.M.M. v. Dept. of Family & Protective Servs.*, Nos. 14-21-00702-CV & 14-21-00730-CV, 2022 WL 1789925, at *11 (Tex. App.—Houston [14th Dist.] June 2, 2022, no pet.) (mem. op.) ("As a general rule, subjecting children to a life of uncertainty and instability endangers the children's physical and emotional well-being.").

In light of this conclusion, we need not consider whether the evidence is legally and factually sufficient to support the trial court's finding under predicate ground (O). *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) ("Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination

when there is also a finding that termination is in the child's best interest."); *see also* Tex. R. App. P. 47.1 (written opinions should be as brief as practicable).

## BEST-INTEREST FINDING

No specific set of facts is required to establish that termination is in the best interest of a child, but there are several nonexclusive factors that may guide the factfinder's best-interest determination. *See In re L.M.*, 57 S.W.3d 823, 837 (Tex. App.—Houston [14th Dist.] 2019, no pet.). These factors include (1) the desires of the child; (2) the child's emotional and physical needs; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those persons seeking custody in promoting the best interest of the child; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) any acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and (9) any excuse for the parent's acts or omissions. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *In re E.R.W.*, 528 S.W.3d 251, 266 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see also* Tex. Fam. Code § 263.307(b) (listing factors to consider in evaluating a parent's willingness and ability to provide the child with a safe environment).

***The Children's Desires.*** The trial began just before the Son's third birthday, and shortly after the Daughter's first birthday. Because of their tender ages, the children did not testify and there is no direct evidence of their desires.

When there is no direct evidence of a child's desires, the factfinder may consider the child's relationship with his or her natural family and whether the child has bonded with his or her foster family. *See In re L.G.R.*, 498 S.W.3d 195, 205 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

7

The Department's caseworker testified that the Mother is "very bonded" with her children. During her visits, the Mother was calm, cooperative, kind, friendly, and engaged. She would play with the children, sing with them, read with them, and praise them for doing good things. However, there was evidence that the Mother could not console the Daughter on one occasion. And critically, the Mother did not attend the termination hearing, despite having received notice of it. The Mother also declined an earlier invitation to Thanksgiving dinner hosted by the foster parents because the alleged father was not welcome.

The caseworker testified that the children had bonded well with each other and with the foster parents. The Son even identified the foster parents as mom and dad.

***The Children's Needs.*** The children do not have any special needs. Since being placed in foster care, they are both on target for meeting their developmental milestones.

***Danger to the Children.*** The children were discovered in a tent, dehydrated and malnourished. The Son could neither stand nor walk, and his weight was so low that he was ranked below the first percentile for his age. The sole cause of this malnourishment was the Mother's failure to adequately provide for the Son's basic needs. And according to the Foster Dad, the Mother did not even realize that the children had been in poor health and had been suffering from nutritional deficiencies. The trial court could have reasonably concluded that both the Son and the Daughter would face renewed nutritional deficiencies if they were returned to the Mother's care. That conclusion is further enforced by the evidence that the Mother had not provided proof of any stable housing or employment, and by the evidence that the Mother had one hair follicle test revealing the presence of methamphetamines and cocaine just three months before the termination hearing.

8

*See In re E.R.W.*, 528 S.W.3d 251, 266 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ("A parent's drug use supports a finding that termination is in the best interest of the child.").

***The Mother's Parental Abilities.*** The caseworker testified that the Mother completed her parenting classes, individual counseling, psychological evaluation, and substance abuse assessment. But because the Mother did not appear for the termination hearing after receiving notice of it, the trial court could have reasonably concluded that the Mother was not willing or able to parent her children.

***Programs.*** There was no mention of any programs available to the Mother to specifically assist her in caring for the children and promoting their best interests.

***Plans.*** The caseworker indicated that the department had considered placement with extended family members, but those family members either withdrew from consideration, or the Mother objected to their involvement.

The Foster Dad testified that he and his wife desire to adopt the children in the event that the Mother's parental rights are terminated. In the meantime, the Foster Dad testified that he has enrolled the Son in a learning center, which he attends twice each week. The Foster Dad also intends to enroll both children in dance programs.

***Stability of the Home.*** The evidence indicated that the Mother alternated between living in a hotel and a tent. According to the caseworker, the Mother also claimed to work various jobs, but those jobs have may been on a part-time basis, and the Mother never provided any pay stubs. Similarly, the Mother never provided the caseworker with any proof of stable housing.

The Foster Dad testified that he and his wife live in a home. They have no other dependents. The Foster Dad works from home as a product manager in the

insurance industry, and he said that he and his wife have the financial means to take care of both of the children.

***The Mother's Acts or Omissions.*** Because the Mother did not personally appear for the termination trial, there is no direct evidence explaining her acts or omissions.

Altogether, the evidence provided the trial court with a substantial basis for doubting whether the Mother has the housing, income, and capabilities required to take care of her two children. Viewing the evidence in the light most favorable to the judgment for our legal-sufficiency analysis, and viewing all of the evidence equally for our factual-sufficiency analysis, we conclude that a reasonable factfinder could have formed a firm belief or conviction that termination of the Mother's parental rights was in the best interest of the children.

## CONCLUSION

The trial court's judgment is affirmed.

/s/     Tracy Christopher
        Chief Justice

Panel consists of Chief Justice Christopher and Justices Wise and Hassan.

10